## Jabez Rogers *vs.* Joseph Hough.

The defendant, in a suit upon a note, may show the note to have been given without consideration.

The right of raising money by a lottery, once granted, but now of no legal force, is not a good consideration for a note.

Where a lottery-act requires three managers, one alone cannot act legally, but his proceedings are void.

If the plaintiff would urge, that the note on which the suit was brought was given to compromise a litigated claim, he must show it to have been so understood at the time of its execution.

This action draws in question the same lottery, brought to view in the suit, *Mills May & Co.* vs. *Chauncey Brownell.* (see 3 *Vt. Rep.* 463.) That was a suit to recover the value of the tickets sold. This is to recover the amount of a note, given for the right of raising money by this lottery. The present plaintiff was the grantee of the lottery. The grant was made in 1792, and was to enable him to raise money to remunerate his loss of a brewery by fire. The statute, in making the grant, appointed three managers, and required that each should be under bonds to the treasurer of the state for the faithful discharge of his trust. It also provided, that *Rogers* should give a bond with sureties in two thousand pounds to said treasurer, conditioned, that the money raised should be expended in a brewery, somewhere in this state. In the year 1798, the managers appointed in the grant having died, or refused to act, another statute passed authorizing the judges of the county court, for said Addison county, to appoint managers in the room and stead of those before appointed, and not acting. After the drawing of one or two classes, the whole lay dormant nearly thirty years, when Anthony Rhodes, claiming to be a manager, was induced by the plaintiff, and perhaps the defendant, to appoint *Hough*, the defendant, an agent to manage the concern, and set the lottery in motion. Before this, application was made to the judges of the county court to supply the vacancies in the managers, and they refused so to do. The plaintiff made a conveyance to *Hough* of the full right to manage, and raise money in this lottery for his own use and benefit. And *Hough* gave the plaintiff therefor his bond securing to the plaintiff $4,000, to be paid after the drawing of certain classes in said lottery, and all within a given time. Some payment was made, and a note, the one on which this action was brought, was given for the balance. The issue was joined to the court, and they decided for the defendant, and the action came to this Court by a bill of exceptions, in which the foregoing facts were stated.

ADDISON,
January,
1832.

Rogers
vs.
Hough.

*O. Seymour, for the plaintiff.*—The plaintiff contends, that the acts of the legislature, refered to in the case, vested in him a right to raise the sum of £1200 by lottery, which right must continue to exist, until the object of the grant has been accomplished, or, until the right shall be determined by the death of the plaintiff, or by legislative enactment or judicial decision ; and that the conveyance by him to the defendant of the right to conduct said lottery and to enjoy the benefit of it, was a legal and sufficient consideration for the bond referred to. There was something advantageous to the obligor and disadvantageous to the obligee. But, whatever might have been the case at the execution of the bond, after the defendant had sold tickets in the lottery to a large amount, drawn one or more classes, and realized the benefit of the plaintiff's grant, and the parties had come to a settlement, the defendant had given the note in question, and the plaintiff discharged the bond, it is too late for the defendant to rely upon the want of consideration. The note was given with a full knowledge of all the facts ; and defendant having given the note in the nature of a compromise, he must be concluded by it.—2 *Com. Dig.* 334.

*Linsley and Chipman, contra.*—The question is, whether the proceedings in the lottery in question were legal and valid. The case of *Mills May & Co.* it is understood was argued and decided on this ground. That was an action on book, for the price of tickets sold in the lottery in question ; and the Court decided, that there could be no recovery, the drawing of the lottery being unauthorized by law, and the contract being, therefore, without consideration. This case cannot be distinguished from that. If *Hough*, or his agent, could not recover for the sale of the tickets, for want of consideration, surely *Rogers* cannot recover for the right to issue the tickets. *Rogers* undertook to sell to *Hough* the right to draw the lottery in question. If *Rogers* had not the right, *Hough* obtained nothing, and *Rogers* lost nothing ; and any promise made thereto would be void. The giving the note did not vary the case, as there can be no pretence that it was in the nature of a compromise. The case shows that it was a mere exchange of one security for another.—*College vs. Williamson,* 1 *Vt. Rep.* 212. But the proceedings, in the lottery in question, were not only void, but illegal, and subjected both *Rogers* and *Hough* to penalties ; and the parties are in *pari delicto,* and neither can recover of the other for any thing growing out of the illegal

transaction.—*Munt et al.* vs. *Stokes,* 4 *T. Rep.* 561 ; *Maybin* vs. *Coulin,* 4 *Dal. Rep.* 298.

*The opinion of the Court was pronounced by*

HUTCHINSON, C. J.—The question now presented is, whether the county court rightly adjudged, that the consideration of the note in dispute, as proved, was not a good and legal consideration. It appears, that the plaintiff held the defendant's bond in the penal sum of $8,000, with a condition thereto annexed, which recited a detailed contract about the sale, from the plaintiff to the defendant, of the plaintiff's right to raise money by his lottery ; for *which defendant was to pay the plaintiff $4000, at two payments,* all in less than a year. One thousand dollars was paid and indorsed on this bond. What other payments were made does not appear in the case : but it appears that this note was given for the balance, and was executed two or three years after the $4,-000 had become payable. The case settles the fact, that this note had no other consideration, than the sale from the plaintiff to the defendant of his lottery, or right of raising money by said lottery. It was suggested in argument, that this note should be treated as given to compromise a litigated claim. But no fact in the case warrants that position. Nothing appears but that the defendant gave this note without suspecting that he had any defence to the bond. This may also be said of two payments, indorsed upon this same note, a month or two after its date.

What, then, was the right of the plaintiff under his lottery grant, which he sold to the defendant, and what was its value at the time of such sale ? It had lain dormant about thirty years. The proof that Rhodes was ever appointed a manager, is very faint. We discover nothing but his giving a bond to the treasurer, as such manager, in the form the law requires. We discover nothing in the case tending to show, that any others ever were appointed, after the additional statute of 1798. A late application for such appointment was refused by the judges. The grant expressly requires three managers to act. The law is well settled, that, in such a case, there must be three to act, and those agree in what they do, or it will be of no avail. Under the act of 1798, *the judges could only make appointments to fill the vacancies then* existing. But it does not appear, that those were ever filled, unless the appointment of Rhodes filled one of them. During the long sleep of this grant, we may well suppose, that all who had signed bonds for managers, or for any other purpose, have died,

ADDISON,
January,
1832.

Rogers.
vs.
Hough.

or changed their residence, or become irresponsible. Indeed, it is said, that Rhodes, the only manager living, lives out of the United States. The giving a bond to the treasurer in £2,000, as security, that the money raised by this lottery should be expended in a brewery within this state, was a condition precedent to any right to raise money by this lottery. It does not appear that such bond was ever given. If such were given soon after the grant, its available force at this day is not to be presumed. Nor is there any pretence that *Hough* was to expend this money, if he obtained any, in any thing connected with a brewery. While this grant has lain dormant, the whole face of society has changed. Wealth has become more uniformly the result of enterprise. The hand of charity has become potent for the relief of the distressed. The necessity, then, supposed to exist, to encourage breweries, has long since ceased. The grant has not been revived. It ought not to be revived. It had ceased to be any authority for issuing and vending lottery tickets. Other statutes enact severe penalties for selling lottery tickets, not authorized by some law of this state. What, then, we again ask, was the right which the plaintiff sold to the defendant, for a part of which sale this note was given? It was the right of attempting to speculate in a void lottery, and forfeit a penalty for every ticket sold, and, probably, become liable to pay back to purchasers all the money they paid for tickets. Its value, then, at the time of the sale, was nothing. It could not form a good and legal consideration for this note, nor for any contract whatever.

But it is said the defendant made this purchase knowingly. The plaintiff, being the grantee, is bound to know, if he had never complied with the conditions of the grant, or if there was any failure in the legal number of managers. Probably the defendant knew all about the business. Be it so, that does not injure his defence. In such case, the law will not aid either to recover of the other. The plaintiff cannot recover his note: nor can the defendant recover back the money he paid.

The judgement of the county court is affirmed.